

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-15-00299-CV

IN RE AMANDA HAYWARD AND                                    RELATORS
TWCS OPERATIONS PTY LTD

----------

ORIGINAL PROCEEDING
TRIAL COURT NO. 153-272310-14

----------

## OPINION

----------

### I. INTRODUCTION

In this original proceeding, Relators Amanda Hayward and TWCS
Operations Pty Ltd. seek a writ of mandamus compelling Respondent to vacate a
September 15, 2015 order imposing a constructive trust that requires them to

deposit $10 million in U.S. dollars into the registry of the court.[1] Because Real Party in Interest Jennifer Pedroza failed to prove the third element necessary to entitle her to establishment of a constructive trust—a res of $10 million cash—Respondent abused her discretion by granting a constructive trust. Because Relators possess no adequate remedy at law, we will conditionally grant the writ.

## II. PERTINENT FACTUAL AND PROCEDURAL BACKGROUND

Pedroza sued Relators claiming that she was a partner in The Writer's Coffee Shop (Coffee Shop), a publishing house run by Hayward.[2] Pedroza claimed that she was entitled to a share of Coffee Shop's profits, including royalties paid to Coffee Shop by Random House for the *Fifty Shades of Grey* trilogy. A jury returned a verdict for Pedroza, finding Pedroza was one of four partners in Coffee Shop. Respondent signed a May 5, 2015 partial judgment for Pedroza on liability and decreed that Pedroza "is entitled to "recover 25% of the net profits of Coffee Shop." The partial judgment decrees that "[t]he amount of the net profits of Coffee Shop will be determined pursuant to the Court's Order for Accounting and Pedroza's share will be included in a later Final Judgment." A final judgment has not been signed.

---

[1]The order required Relators to make the deposit by September 25, 2015, but on September 23, 2015, we granted Relators' motion for a temporary emergency stay of the order pending our disposition of this original proceeding.

[2]TWCS Operations Pty Ltd. was formed by Hayward as successor entity to Coffee Shop; for purposes of this opinion, our references to Coffee Shop include TWCS Operations Pty Ltd.

After the jury returned its verdict for Pedroza, she filed a motion for application of equitable remedies, seeking imposition of a constructive trust. Respondent signed a May 29, 2015 order requiring that an upcoming royalty payment from Random House be placed in an interest-bearing escrow account by Random House and requiring that Relators

> designate $10 million (in United States dollars) in assets (the "Assets") traceable to any royalties paid at any time by Random House for the sale of the *Fifty Shades of Grey* trilogy, or any other funds received in connection with the business of Coffee Shop, or properties purchased with said royalties or funds, for retention by Defendants (as ordered below) during the pendency of this case. Such Assets are to be designated by location, account number, address, or any other reasonable manner by which the Assets, including the amount or value of such Assets, can be identified and located with specificity. The Assets may be in cash, property, or otherwise, or any combination thereof, but shall include the Random House Payment referenced above, as well as whatever funds may remain from the Random House royalty payment previously made for the royalty period ending June 30, 2014, and funds in an investment portfolio at [location omitted] Bank . . . . To the extent any properties purchased with the referenced funds or royalties are currently encumbered, the Defendants shall first designate unencumbered properties.

> IT IS FURTHER ORDERED that the Defendants shall maintain the Assets and may not transfer, move, dispose of, further encumber, assign, sell, alienate, deplete, conceal, or otherwise dispose of the Assets until such time as a hearing on the profits of Coffee Shop can be held, or until such other time as this Order may be extended.

> IT IS FURTHER ORDERED that nothing in this Order shall prevent the Defendants from paying legitimate business expenses of The Writer's Coffee Shop incurred after the date of this Order, as well as attorney's fees and expenses incurred in this case after the date of this Order. The Defendants shall provide an accounting to the Court and to the plaintiff of any such payments on a monthly

basis, such accounting to be provided on the first day of each month.

After entry of the partial judgment and while the parties were ascertaining Coffee Shop's net profits in an effort to convert Pedroza's twenty-five percent interest into a dollar figure to be utilized in the final judgment, Pedroza filed a second motion for application of equitable remedies. Respondent conducted a hearing on August 7, 2015, and signed the September 15, 2015 order creating a constructive trust over $10 million in cash and ordering that amount paid into the registry of the court.

Respondent's order provides, in pertinent part:

> [T]he Court finds that the elements required for a constructive trust have been met. [Hayward] has been unjustly enriched and benefitted by her actions as found by the jury at the trial of this matter. Specifically, [Hayward] has received the $40+ million in royalties from the sales of the trilogy of books known as *Fifty Shades of Grey* trilogy (the res) which were owned by the partnership.
>
> . . . .
>
> IT IS, THEREFORE, HEREBY ORDERED that [Pedroza's] Second Motion for Application of Equitable Remedies is GRANTED, and a constructive trust is imposed, as follows: [Relators] are ORDERED to deposit into the registry of the Court, by the close of business on September 25, 2015 $10,000,000.00 (Ten-Million and no/100 dollars) in U.S. dollars from the funds traceable to any royalties paid at any time by Random House for the sale of the *Fifty Shades of Grey* trilogy, or any other funds received in connection with the business of The Writer's Coffee Shop.
>
> This Court does not specify which asset or assets Defendant should use to satisfy this Order (whether property, cash, investments or otherwise) other than the fact that it is to be paid out of the funds traceable to the royalties from the *Fifty Shades* trilogy; nor does this Court in any way require Defendant to liquidate any property or

4

asset.  In so Ordering, the Court does not consider this Constructive Trust to be a substitute for any supersedeas bond that may be required in the event of an appeal, but instead intends it to be a Constructive Trust to prevent unjust enrichment of the Defendant.

Relators filed this original proceeding, asserting that Respondent abused her discretion by ordering them to deposit $10 million in cash into the registry of the court.

## III.  STANDARD OF REVIEW

Mandamus relief may be available if the relator establishes a clear abuse of discretion for which there is no adequate appellate remedy.  *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding).  Although we will not disturb the trial court's resolution of disputed fact matters, a trial court has no discretion in determining what the law is or in applying the law to the facts.  *See Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding).

## IV.  THE LAW CONCERNING THE RES OF CONSTRUCTIVE TRUSTS

A party seeking to impose a constructive trust must establish (1) breach of a special trust or fiduciary relationship or actual or constructive fraud, (2) unjust enrichment of the wrongdoer, and (3) an identifiable res that can be traced back to the original property.  *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 87 (Tex. 2015).  The proponent of a constructive trust must strictly prove these elements. *Hubbard v. Shankle*, 138 S.W.3d 474, 485 (Tex. App.—Fort Worth 2004, pet. denied).  To prove an identifiable res, the proponent of the constructive trust

5

must show that the specific property that is subject to the constructive trust is the same property—or the proceeds from the sale thereof or revenues therefrom—that was somehow wrongfully taken. *Wheeler v. Blacklands Prod. Credit Ass'n*, 627 S.W.2d 846, 851 (Tex. App.—Fort Worth 1982, no writ). When the property sought to be recovered or its proceeds have been dissipated so that no product remains, the constructive-trust-seeking proponent's only claim is that of a general creditor. *See Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214, 122 S. Ct. 708, 714 (2002). A constructive trust on unidentifiable cash proceeds is inappropriate. *Meadows v. Bierschwale*, 516 S.W.2d 125, 131 (Tex. 1974).

## V. ANALYSIS

Pedroza failed to establish the third constructive trust element; she failed to show that the $10-million-cash res of Respondent's constructive trust was the *same property*—or the proceeds from the sale thereof or revenues therefrom—that was wrongfully taken from her. *See Wheeler*, 627 S.W.2d at 851. Pedroza presented no evidence at the August 7 hearing that Hayward possessed $10 million cash in royalties that were paid to Coffee Shop.[3] Instead, Pedroza argued

---

[3]To the contrary, Pedroza's response concedes that Hayward does not have $10 million cash on hand in royalties paid to TWCS:

> [T]here is considerable evidence that the Royalties have been lost or depleted. Hayward personally received more than $40 million in Royalties, but she now complains that she can't even come up with $10 million in funds to satisfy the court's order because she personally spent or invested all of those Royalties, with the exception of about $1 million that she claims to have invested back into Coffee Shop. The inescapable conclusion is that, whether by

6

for imposition of a constructive trust based on the accounting conducted to determine the dollar figure attributable to Pedroza's ownership interest in Coffee Shop. The accounting purportedly showed that $28 million of the total approximately $40 million paid to Coffee Shop in royalties was accounted for by Hayward as being spent to pay taxes; invested in homes, companies, and Coffee Shop; and placed in other investments. According to Pedroza, $12 million of the royalties paid to Coffee Shop were "unaccounted for." Pedroza urged Respondent to impose a constructive trust based primarily on the allegedly unaccounted-for $12 million. But a missing or unaccounted for $12 million does not constitute a res to which a constructive trust may attach. *See Great-W. Life & Annuity Ins. Co.*, 534 U.S. at 214, 122 S. Ct. at 714 (recognizing a constructive trust cannot be imposed when the property or its proceeds have been dissipated).

Pedroza's failure to meet her burden of strictly proving an identifiable res constituting the same property—or the proceeds from the sale thereof or revenues therefrom—that was wrongfully taken from her (royalties paid to Coffee Shop) is demonstrated by Respondent's order itself. The order states that "[t]his Court *does not specify which asset or assets Defendant should use to satisfy this Order* (whether property, cash, investments[,] or otherwise) other than the fact

---

paying taxes or attorney's fees, buying real estate, personal spending, or investment in other businesses, Hayward has depleted the Royalties.

7

that it is to be paid out of the funds traceable to the royalties from the *Fifty Shades* trilogy." [Emphasis added.] A constructive trust cannot attach to unidentified assets; "[d]efinitive, designated property, wrongfully withheld from another, is the very heart and soul of the constructive trust theory." *Wheeler*, 627 S.W.2d at 851. In order to fasten a constructive trust on property owned by the defendant, some particular property must be identified. *KCM Fin. LLC*, 457 S.W.3d at 88; *see also Wheeler*, 627 S.W.2d at 852 (reversing constructive trust imposed on all assets of defendant). Without the requirement that the res be strictly traced back to the original property wrongfully withheld from the movant for a constructive trust or to proceeds from that property, "any suit on a debt or obligation could be used to impress a constructive trust on the assets of the defendant." *See KCM Fin. LLC*, 457 S.W.3d at 88. The order states that Relators are to deposit $10 million "*from the funds traceable to any royalties paid at any time by Random House . . . or any other funds received in connection with the business of [Coffee Shop]*." But the party seeking imposition of a constructive trust—not the party opposing it—bears the burden of strictly tracing the property to be placed into a constructive trust to property wrongfully withheld from the party seeking the trust. *See, e.g.*, *id.* at 87 (recognizing party seeking constructive trust "must establish . . . an identifiable res that can be traced back to the original property"); *Hubbard*, 138 S.W.3d at 485 (same). Because Pedroza failed to strictly prove an identifiable res, Respondent's order erroneously placed

8

the tracing burden on Relators, requiring Relators to trace royalties paid to Coffee Shop to $10 million cash allegedly in their possession.

The lack of a specifically identifiable res is further evidenced by the following argument made by Pedroza in her response to Relators' petition for writ of mandamus:

> Relators have various options available to satisfy the court's order. They can use the real estate as collateral and take out a loan to make the deposit. By doing so, they would retain the real estate and not be required to liquidate it. Or they can place title to the real estate in the court's registry. Again, by doing so they would not be required to liquidate it. Or they can resort to that unaccounted-for $12 million (discussed above) to come up with the funds.

Pedroza's argument that "various options" are available to Hayward to "come up with the funds" shows that a res of $10 million in cash has not been specifically identified. A party cannot be forced to take out a loan to create a res; a loan is not definitive, designated property or proceeds therefrom wrongfully withheld from Pedroza that can constitute the res of a constructive trust. *See KCM Fin. LLC*, 457 S.W.3d at 88. And Respondent's order places a constructive trust specifically on $10 million in cash, which must be deposited into the registry of the court; Pedroza did not seek, and Respondent did not grant, a constructive trust over any real property. *Cf. In re Kerr*, 293 S.W.3d 353, 358 (Tex. App.—Beaumont 2009, orig. proceeding) (explaining that demand for constructive trust on an interest in land is tantamount to attempt to recover property triggering mandatory venue in county where property is located).

9

Pedroza argues that Respondent's order is nonetheless proper under the line of cases holding that when ownership of a fund of monies is disputed and the monies are in danger of being lost or depleted, a trial court may order the monies deposited into the registry of the court. *See Castilleja v. Camero*, 414 S.W.2d 431, 433 (Tex. 1967); *In re Reveille Res. (Tex.), Inc.*, 347 S.W.3d 301, 304–05 (Tex. App.—San Antonio 2011, orig. proceeding) (recognizing general rule but holding trial court abused its discretion by ordering $455,377.91 deposited into registry); *Cypress Med. Ctr. Operating Co. v. St. Laurent*, 296 S.W.3d 171, 179–80 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding) (recognizing general rule but holding trial court abused its discretion by ordering partnership to deposit future distributions allegedly owed to partner into the court's registry).

In *Castilleja*, the party seeking deposit of monies into the registry of the court had obtained a judgment awarding him an ownership interest in the amount of $17,000 in a specific fund held by the defendant. 414 S.W.2d at 433. The defendant perfected an appeal; the party seeking deposit of monies into the registry obtained a writ of execution on the judgment that was returned *nulla bona*, alleged that the defendant was insolvent, and alleged that "the specific fund in which [the plaintiff] was awarded an interest [by the judgment] was in Mexico and out of the jurisdiction of the court." *Id.* Thus, the disputed fund in danger of being depleted in *Castilleja* was a "specific sum of money in the Banco Longoria Reynosa, Mexico, $17,000.00 of which belonged [per the judgment] to [the party seeking deposit into the registry]." *Id.* The Texas Supreme Court held

10

that "[u]nder such circumstances[,] a court can order payment of the disputed funds into its registry until ownership is determined" under the rationale that "[t]he entry of orders, after appeal, which are not inconsistent with the original judgment may be made to conserve the property which is the subject of appeal." *Id.*

This line of cases is inapplicable to the present facts. The facts here do not present the issue of whether Hayward owns or whether Pedroza owns a specific account containing $10 million that would justify deposit of the "disputed funds into [the court's] registry until its ownership is determined" as in *Castilleja.*[4] *See id.* Instead, Pedroza argued to Respondent that a constructive trust should be imposed to ensure sufficient monies and assets would exist to satisfy a final judgment for Pedroza in the amount of about $10.5 million, which is approximately twenty-five percent of the royalties paid to Coffee Shop.[5] A

---

[4]The record from the August 7 hearing reflects that Random House is "holding" its last royalty payment in an interest-bearing escrow account and that Hayward has an investment account with some monies in it. Although discussions occurred at the hearing about ordering Random House to deposit these funds into the registry of the court and about ordering Hayward to deposit funds specifically from the investment account into the registry of the court, that is not what Respondent ultimately ordered.

[5]At the August 7, 2015 hearing, the following colloquy occurred:

> [Respondent]: But what I really want, and I'm very serious about it, is to make sure, out of all of that money, there is money left to collect the judgment. Which I haven't heard the testimony, I haven't heard the evidence, but it sounds like it's somewhere between roughly $10.5 million. So I have yet for anyone to stand up and say, Judge, don't worry about it, there will be plenty of money to satisfy the judgment.

11

constructive trust is not a proper vehicle for collecting general assets (as opposed to an identifiable res) as a form of damages. *See Great-W. Life & Annuity Ins. Co.*, 534 U.S. at 214, 122 S. Ct. at 714 (recognizing that when a plaintiff cannot assert title or right to possession of a particular property but may be able to show just grounds for recovering money to pay for some benefit the defendant received from him, the plaintiff has a right of restitution at law in the form of a money judgment against the defendant but does not have a right of restitution in equity for a constructive trust); *see also KCM Fin. LLC*, 457 S.W.3d at 88.

Because Pedroza did not strictly prove the third element necessary to the establishment of a constructive trust, we sustain Relators' second issue claiming that Respondent abused her discretion by ordering $10 million deposited into the registry of the court. Because no final judgment exists and because

---

[Pedroza's Counsel]: I haven't heard that either. Our thinking is on that unaccounted for money, if you take the money that Random House is holding, you take the investment account —

[Respondent]: That we don't know how much is in?

[Pedroza's Counsel]: — that we don't know how much is in. But then whatever that number is, the question is is that unaccounted for 12 million somewhere in a liquid account to where that can be supplemented then to bring it up to the 10.5 or 10.7 million.

[Respondent]: Well, if that was true, then there would be some failure to disclose, which I just I don't see — I don't have a belief that someone is failing to disclose an entire account. I just don't think that that's likely.

12

Respondent's order will require Relators to create a res that Pedroza did not prove exists, we likewise sustain Relators' fifth issue claiming they have no adequate remedy by appeal. *See, e.g.*, *Reveille Res. (Tex.), Inc.*, 347 S.W.3d at 304–05 (granting mandamus relief from order requiring funds to be deposited into registry); *Cypress Med.*, 296 S.W.3d at 179–80 (same).

## VI. CONCLUSION

Having sustained Relators' second and fifth issues, we need not address their first, third, or fourth issues. *See* Tex. R. App. P. 47.1. Having determined that Respondent's September 15, 2015 order imposing a constructive trust on $10 million in U.S. currency and ordering that amount deposited into the registry of the court constitutes an abuse of discretion and having determined that Relators have no adequate remedy by appeal, we conditionally grant a writ of mandamus. Respondent is ordered to immediately sign an order vacating her September 15, 2015 order.[6] We are confident Respondent will comply, and the writ will issue only if she does not.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL: DAUPHINOT, WALKER, and GABRIEL, JJ.

DELIVERED: October 26, 2015

---

[6]This court's temporary stay issued on September 23, 2015, will be dissolved without further order of this court upon Respondent's signing an order vacating her September 15, 2015 order.

13