

# NUMBER 13-19-00447-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CDM CONSTRUCTORS, INC.
AND CDM SMITH, INC.,                                                     Appellants,

v.

CITY OF WESLACO, TEXAS,                                                  Appellee.

**On appeal from the 139th District Court
of Hidalgo County, Texas.**

# MEMORANDUM OPINION

**Before Justices Benavides, Longoria, and Tijerina
Memorandum Opinion by Justice Longoria**

Appellants CDM Constructors, Inc. and CDM Smith, Inc. bring this interlocutory appeal to challenge the denial of their motions to dismiss pursuant to the Texas Citizen's Participation Act (TCPA). *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(12). By three issues, appellants contend that the trial court erred in failing to dismiss appellee the

City of Weslaco's (the City) claims against them. We affirm.

## I.   BACKGROUND

The Texas Commission on Environmental Quality (TCEQ) notified the City that its water treatment facilities were non-compliant and needed improvements. The City contracted with CDM Constructors in 2008 to repair and improve the City's south wastewater treatment plant (Project 1). In 2012, the City contracted with CDM Constructors to build a new treatment plant and distribution system (Project 2).

In October 2018, the City filed suit against CDM Constructors for declaratory relief regarding CDM Constructors' allegation that the City still owed $2,400,000 under the contract for Project 2. The City amended its petition, adding additional claims against CDM Constructors. The City then filed another amended petition, maintaining the same claims and adding CDM Smith, among others, as a defendant. In its live pleading, the City asserts claims against appellants for fraud and conspiracy, for which it seeks monetary damages, and in the alternative, equitable relief based on the theories of unjust enrichment and constructive trust. It also asserts claims specifically against CDM Constructors for "money-had-and-received and declaratory judgment," seeking rescission as an equitable remedy.

The City's live pleading alleges that appellants committed fraud by "making false representations to the City to pay [appellants] millions of dollars." Further, the City alleges that appellants committed acts of bribery and civil conspiracy in order to defraud the city. The City's allegations are based on the City's contention that appellants, along with several other individuals and companies, conspired to have the contracts for Project 1

2

and Project 2 awarded to appellants as part of a larger scheme to inflate invoices and defraud the City of large amounts of money.

After the City filed its third amended petition, CDM Constructors filed a TCPA motion to dismiss the City's claims that were added in the second amended pleading but did not challenge the initial claim brought by the City. Subsequently, CDM Smith filed a TCPA motion to dismiss the claims specifically asserted against it by the City's third amended petition. The motions were consolidated and set for a single hearing.

The City filed a response, the appellants filed a joint reply in support of their motions, and the City filed a sur-reply in opposition. The trial court denied appellants' motions and this appeal followed.

## II.    TCPA

By three issues, appellants argue that the trial court erred in denying the TCPA motions to dismiss. Specifically, appellants contend that (1) the TCPA applies to the City's challenged claims, (2) the commercial speech exemption cannot apply to the challenged claims, and (3) there is no clear and specific evidence of all essential elements of the City's challenged claims.

## A.    Standard of Review & Applicable Law

We review de novo a trial court's ruling on a TCPA motion to dismiss. *Dall. Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019). In conducting our review, we consider the pleadings and evidence in a light favorable to the nonmovant. *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 424 (Tex. App.—Dallas 2019, pet. denied).

The TCPA is an anti-SLAPP law; "SLAPP" is an acronym for "Strategic Lawsuits

3

Against Public Participation." *Fawcett v. Grosu*, 498 S.W.3d 650, 654 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (op. on reh'g). The TCPA is intended "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002; *Cox Media Grp., LLC v. Joselevitz*, 524 S.W.3d 850, 859 (Tex. App.—Houston [14th Dist.] 2017, no pet.). The TCPA "protects citizens from retaliatory lawsuits that seek to intimidate or silence them" from exercising their First Amendment freedoms and provides a procedure for the "expedited dismissal of such suits." *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015). We construe the TCPA liberally to effectuate its purpose and intent fully. *See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018); *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 27.011(a).

A defendant invoking the act's protections must show first, by a preponderance of the evidence, that the plaintiff's legal action is "based on, relates to, or is in response to" the defendant's exercise of one or more of the enumerated rights. *In re Lipsky*, 460 S.W.3d at 586. If the defendant makes the initial showing, the burden shifts to the plaintiff to establish by clear and specific evidence a prima facie case for each essential element of the claim in question. *See id*. at 587. "Prima facie case" refers to the quantum of evidence required to satisfy the nonmovant's minimum factual burden and generally refers to the amount of evidence that is sufficient as a matter of law to support a rational

4

inference that an allegation of fact is true. *See id*. at 590.

The evidence offered to support a prima facie case must be "clear and specific." *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017) (per curiam). Clear and specific evidence means that the nonmovant must provide enough detail to show the factual basis for its claim. *Id*. at 904. If the movant's constitutional rights are implicated and the nonmovant has not met the required showing of a prima facie case, the trial court must dismiss the nonmovant's claim. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005. The trial court considers "the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id*. § 27.006(a).

## B.    Applicability

Appellants contend that the TCPA applies to the challenged claims because those claims "arise from Appellants' specific exercise of their respective rights of free speech on matters of public concern, rights to petition, and rights of association."

### 1.    Free Speech

The TCPA defines the "exercise of the right of free speech" as a "communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3). A "matter of public concern" includes an issue related to health or safety; environmental, economic, or community well-being; or a good, product or service in the marketplace. *Id.* § 27.001(7)(A)–(B), (E).[1] Communications do not become a

---

[1] Appellants' TCPA motion to dismiss was denied by written order on August 26, 2019, prior to September 1, 2019, the date upon which the recent amendments to the TCPA went into effect. The prior, pre-amendment version of the TCPA therefore applies to appellants' claims and this appeal. *See* 2019 Tex. Sess. Law Serv. Ch. 378 (H.B. 2730) ("Chapter 27, Civil Practice and Remedies Code, as amended by this Act, applies only to an action filed on or after the effective date of this Act. An action filed before the effective date of this Act is governed by the law in effect immediately before that date, and that law is continued in effect for that purpose. . .. This Act takes effect September 1, 2019."). Accordingly, our citations and

matter of public concern simply based on the nature of the parties' business—there must be some relevance to issues beyond the interests of the parties. *See Caliber Oil & Gas, LLC v. Midland Visions* 2000, 591 S.W.3d 226, 239–40 (Tex. App.—Eastland 2019, no pet.) (holding that, for a communication to relate to economic well-being, it must "have an impact on more than the party's personal financial well-being" and to relate to community well-being, a communication must affect "the well-being of the community at large or at least a subset of its residents"); *see also Staff Care, Inc. v. Eskridge Enters., LLC*, No. 05-18-00732-CV, 2019 WL 2121116, at *4 (Tex. App.—Dallas May 15, 2019, no pet.) (mem. op.) (noting that, to determine whether the TCPA applies, a court "must look to the content of the communications themselves and not focus solely on the occupation of the speaker or the related industry"); *Blue Gold Energy Barstow, LLC v. Precision Frac, LLC*, No. 11-19-00238-CV, 2020 WL 1809193, at *7 (Tex. App.—Eastland Apr. 9, 2020, no pet.) (mem. op.).

Appellants contend that the communications at issue here fall into the category protected by the TCPA as they involved matters of public concern, specifically the City's water treatment plant. The City, however, likens this case to *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127 (Tex. 2019), which the City contends served to restrict the scope of the TCPA. The City argues that the TCPA does not apply here because this case involved communications relating to a private contract dispute which relates to appellants' "own financial interests, not matters of public concern." We agree

analyses are to the TCPA as it existed prior to September 1, 2019, unless otherwise noted. Nothing in this opinion should be read to express an opinion regarding the proper construction or application of any amended provision of the TCPA.

6

with appellants.

Here, contrary to the cases cited by the City that follow the holding in *Creative Oil*, the contract was not between private entities, but rather between private companies and the City, and concerned the public water supply in the City.

> We have previously held that private communications are sometimes covered by the TCPA. *E.g., ExxonMobil Pipeline Co.*, 512 S.W.3d 895; *Lippincott v. Whisenhunt*, 462 S.W.3d 507 (Tex. 2015) (per curiam). These prior cases involved environmental, health, or safety concerns that had public relevance beyond the pecuniary interests of the private parties involved. *See ExxonMobil Pipeline Co.*, 512 S.W.3d at 898, 901 (concluding that private statements by movants concerning plaintiff's alleged failure to gauge a storage tank related to a matter of public concern due to "serious safety and environmental risks"); *Lippincott*, 462 S.W.3d at 509–10 (concluding that alleged improper provision of medical services by a health care professional are matters of public concern).

*Id.*, 591 S.W.3d at 136. As discussed in detail by *Morris v. Daniel*,

> In *Creative Oil*, a ranch sued to terminate an oil and gas lease. 591 S.W.3d at 130. The operator and lessee counterclaimed alleging the ranch had misrepresented the status of the lease to third-party purchasers of production and urged these third-party purchasers to stop making payments. *Id*. The ranch responded by filing a motion to dismiss under the [TCPA], arguing that its statements to third parties were an exercise of the right to free speech because these communications addressed a matter of public concern. *Id*. The ranch maintained that its speech addressed a matter of public concern because, among other things, its speech related to goods, products, or services offered in the marketplace. *Id*. at 134 (relying on prior version of [the TCPA] that explicitly included marketplace goods, products, and services in definition of "matter of public concern").

> The Court rejected the ranch's position. *Id*. at 134–36. It observed that almost all contracts involve a marketplace good, product, or service but that this is not enough to make every communication about these contracts a matter of public concern. *Id*. at 134. The Court reasoned that for the ranch's statements to be on a matter of public concern, the statements had to be relevant to the wider marketplace—the public audience of potential buyers and sellers—rather than just the parties to the contract and the third-party purchasers to whom the ranch made the statements. *Id*. at 134–36. The Court held that a private contract dispute affecting only the fortunes of

7

the litigants necessarily is not a "matter of public concern" under any definition of these words. *Id*. at 137.

615 S.W.3d 571, 577–78 (Tex. App.—Houston [1st Dist.] 2020, no pet.). Appellants contend that the City's public water supply is a matter of public concern because it implicates the wider marketplace. *See id*. Moreover, unlike *Creative Oil*, the City's allegations are based on conversations regarding the agreement, or procurement of the agreement, between the City, a governmental entity, and appellants. *See id*. Communications relating to the manner in which the government operates relate to matters of public concern. *In re Lipsky*, 411 S.W.3d at 543. In addition, "the award of public contracts is almost always a public matter and an issue of public concern." *Farias v. Garza*, 426 S.W.3d 808, 819 (Tex. App.—San Antonio 2014, pet. denied), *disapproved on other grounds, In re Lipsky*, 460 S.W.3d at 591.

In this case, we hold appellants' communications regarding their contract with the City were based on or related to a matter of public concern. *See Hicks v. Group & Pension Administrators, Inc.*, 473 S.W.3d 518, 530 (Tex. App.—Corpus Christi–Edinburg 2015, no pet.) (concluding emails regarding concerns about a company's ability to perform services to be provided by the company pursuant to a potential contract between the company and a school district related to matter of public concern); *see also Mission Wrecker Serv., S.A., Inc. v. Assured Towing, Inc.*, No. 04-17-00006-CV, 2017 WL 3270358, at *4 (Tex. App.—San Antonio Aug. 2, 2017, pet. denied) (mem. op.). Appellants' first issue is sustained.

## C.     Commercial Speech Exemption

By their second issue, appellants argue that the "commercial speech exemption"

does not prevent dismissal of the City's challenged claims. Intertwined with and overlying the TCPA's multi-step dismissal process is the TCPA provision exempting certain actions from the TCPA's application. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.010; *Morrison v. Profanchik,* 578 S.W.3d 676, 680 (Tex. App.—Austin 2019, no pet.). The commercial speech exemption provides that the TCPA, and its dismissal provisions, do not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer. TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(a)(2). When invoked, the trial court must consider an exemption's applicability after and in the context of the movant having met its initial burden under the first step of the dismissal process. *See Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018); *Morrison*, 578 S.W.3d at 680. The party asserting the commercial speech exemption bears the burden of proving its applicability by a preponderance of the evidence. *Hieber v. Percheron Holdings, LLC*, 591 S.W.3d 208, 211 (Tex. App.—Houston [14th Dist.] 2019, pet. denied); *Grant v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865, 887 (Tex. App.—Austin 2018, pet. denied). In deciding whether the nonmovant has satisfied that burden, the scope of our review includes the pleadings and any supporting affidavits, both of which are taken as evidence in the TCPA context. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.006; *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017); *Hieber*, 591 S.W. 3d at 211. We also review this evidence in the light most favorable to the nonmovant. *Hieber*, 591 S.W.3d at 211. If an action falls under a TCPA

exemption, the TCPA does not apply and may not be used to dismiss the action. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.010; *Best v. Harper*, 562 S.W.3d 1, 11–12 (Tex. 2018). Accordingly, application of an exemption relieves the nonmovant from making a prima facie case. *See Round Table Physicians Group, PLLC v. Kilgore*, 607 S.W.3d 878, 883 (Tex. App.—Houston [14th Dist.] 2020, pet. filed); *see also Atlas Survival Shelters, LLC v. Scott*, No. 12-20-00054-CV, 2020 WL 6788714, at *6 (Tex. App.—Tyler Nov. 18, 2020, no pet.) (mem. op.).

> Focusing on the text and context of the TCPA's commercial-speech exemption, we construe the exemption to apply when (1) the defendant was primarily engaged in the business of selling or leasing goods, (2) the defendant made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services, (3) the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant provides, and (4) the intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods or services the defendant provides.
>
> The exemption expressly provides that the TCPA "does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services," but only "if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction." TEX. CIV. PRAC. & REM. CODE [ANN.] § 27.010(b). While these clauses do not expressly state that the statement or conduct must arise out of "the defendant's" sale or lease of goods or services, or that the defendant be acting in its capacity as a seller or lessor of those goods or services, we believe that is the only reasonable and logical construction of the exemption when considered within its statutory context.

*Castleman*, 546 S.W.3d at 688. We begin by addressing the fourth element, the intended audience, as it is dispositive of appellants' second issue.

The City was required to show that the intended audience of appellants' statements and conduct was an actual or potential customer for the kind of services that

appellants provide. The City contends that as the actual customer of appellants' services for the construction contract, the City was the intended audience of the statements made to procure the contract. Specifically, the City argues that the communications were directed to the City from others on behalf of appellants. Appellants, in contrast, argue that the alleged statements complained of by the City were made to separate individuals and other businesses, not the City itself, and therefore were not made to an intended customer. We agree with appellants. To establish the applicability of the commercial speech exemption, the City needed to show that the intended audience of the alleged statements were actual or potential customers of appellants. *Castleman*, 546 S.W.3d at 688. However, by its own pleadings and in its appellate briefing, the City's lawsuit is based on allegations that appellants schemed and conspired with certain individuals and businesses without the City's knowledge, meaning, the City was clearly not the audience of the alleged statements. We conclude the City failed to establish the commercial speech exemption. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.010(a)(2); *Castleman*, 546 S.W.3d at 688. Appellants' second issue is sustained.

Accordingly, because we hold that the TCPA is applicable to the challenged claims and the commercial speech exemption has not been established, we turn now to whether the City established by clear and specific evidence a prima facie case for each essential element of the claim in question. *See In re Lipsky*, 460 S.W.3d at 587.

D.      **Prima Facie Case**

Appellants argue in their third issue that the City did not meet its burden to establish clear and specific elements for each of the challenged claims. *See* TEX. CIV. PRAC. & REM.

11

CODE ANN. § 27.005(c) (providing that trial court may not dismiss legal action if nonmovant shows by "clear and specific evidence prima facie case for each essential element of claim in question"). "'[P]rima facie case' has a traditional legal meaning. It refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted. It is the minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *In re Lipsky*, 460 S.W.3d at 590 (internal citations and quotations omitted). Because the TCPA does not define "clear and specific evidence," we give those terms their ordinary meanings. *Id*. "The words 'clear' and 'specific' in the context of this statute have been interpreted respectively to mean, for the former, 'unambiguous,' 'sure,' or 'free from doubt' and, for the latter, 'explicit' or 'relating to a particular named thing.'" *Id*. (quoting *KTRK Television, Inc. v. Robinson*, 409 S.W.3d 682, 689 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). Collectively, these elements require that a party "provide enough detail to show the factual basis for its claim." *In re Lipsky*, 460 S.W.3d at 591.

### 1. Fraud

A plaintiff seeking to prevail on a fraud claim must prove that (1) the defendant made a material misrepresentation; (2) the defendant knew the representation was false or made the representation recklessly without any knowledge of its truth; (3) the defendant made the representation with the intent that the other party would act on that representation or intended to induce the party's reliance on the representation; and (4) the plaintiff suffered an injury by actively and justifiably relying on that representation.

*Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 217 (Tex. 2011). Appellants specifically challenge the City's evidence on "the reliance [and] intent elements."

Appellants state that the City's only "evidence" on the element of reliance are the

allegations in its pleadings and the affidavit of the City's attorney, both of which appellants argue are baseless and conclusory. The City may rely on circumstantial evidence—indirect evidence that creates an inference to establish a central fact—unless "the connection between the fact and the inference is too weak to be of help in deciding the case." *In re Lipsky*, 460 S.W.3d at 589. Here, the City's evidence consisted of allegations that appellants concocted a bribery scheme to secure a lucrative contract with the City regarding the City's water treatment plant. There is no dispute that the City and appellants entered into multimillion dollar contracts for appellants to design and construct new and updated water treatment facilities, which necessarily infers that the City relied on appellants' representations to award the contract to appellants.

The movant for dismissal under the TCPA has no burden to disprove the existence of a prima facie case. Indeed, the movant *cannot* do so, because "[p]rima facie proof is not subject to rebuttal, cross-examination, impeachment[,] or even disproof." *Rodriguez v. Gonzales*, 566 S.W.3d 844, 849 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (quoting *KBMT Operating Co., LLC v. Toledo*, 492 S.W.3d 710, 721 (Tex. 2016)).

Appellants also challenge the City's evidence on the intent element. The City, in turn, states that it presented evidence through its pleadings and supporting affidavits that appellants "failed to disclose the truth to the City precisely because they intended for the City to rely on their misrepresentations."

> In Texas's fraud jurisprudence, courts considering the intent element focus on the defendant's knowledge and intent to induce reliance. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 578 (Tex. 2001). A defendant who acts with knowledge that a result will follow is considered to intend the result. *Id*. at 579. A party's intent is determined at the time that it makes the complained-of representation; however, intent may be inferred

13

from the party's acts made after the representation. *Aquaplex, Inc. v. Rancho La Valencia*, Inc., 297 S.W.3d 768, 775 (Tex. 2009). "[I]ntent to defraud is not usually susceptible to direct proof." *Id*. at 774–75. Thus, intent to defraud, or intent to induce reliance, most often must be proven by circumstantial evidence. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986). "Intent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given to their testimony." *Id*. at 434.

*Samson Lone Star Ltd. P'ship v. Hooks*, 497 S.W.3d 1, 15 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). Fraud [can] not be inferred from the "vague, indefinite, and inconclusive" testimony of interested witnesses. *In re Lipsky*, 460 S.W.3d at 588 (quoting *S. Cantu & Son v. Ramirez*, 101 S.W.2d 820, 822 (Tex. App.—San Antonio 1936, no writ)).

Appellants argue, however, that the affidavit is conclusory and therefore insufficient to satisfy the TCPA's requirement of "clear and specific evidence."

Bare, baseless opinions do not create fact questions, and neither are they a sufficient substitute for the clear and specific evidence required to establish a prima facie case under the TCPA. *See Elizondo v. Krist*, 415 S.W.3d 259, 264 (Tex. 2013) ("Conclusory statement[s] . . . [are] insufficient to create a question of fact to defeat summary judgment."); *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009) (holding conclusory, baseless testimony to be no evidence).

*In re Lipsky*, 460 S.W.3d at 592–93. The City's argument is largely based on inference—specifically stating "[t]here can be no explanation for these bribe payments other than the CDM Entities intended for the City to rely on the information being conveyed through the chain of conspirators, including presentation of the falsified cost reports and phony invoices from the CDM Entities." However, the City also presented evidence that an agent for appellants, through a series of bribe payments, secured "favorable votes and other actions" to obtain the contracts with the City, allowing the appellants to defraud the City

14

through "falsified cost reports and phony invoices." The agent's affidavit gives specific facts about how appellants intended to defraud the City. Accordingly, we find that the City established a prima facie case under the TCPA as to the challenged elements of its fraud claim against appellants.

## 2. Damages

Direct evidence of damages is not required, but the evidence must be sufficient to allow a rational inference that some damages naturally flowed from the defendant's conduct. *See S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018); *In re Lipsky*, at 591, 592; *Sw. Battery Corp. v. Owen*, 115 S.W.2d 1097, 1099 (1938) ("A party who breaks his contract cannot escape liability because it is impossible to state or prove a perfect measure of damages.").

Appellants argue that the City's pleadings "provide only general averments and conclusory assumptions" regarding the alleged damages. Such conclusory statements would not satisfy the requirements for "clear and specific evidence" under the TCPA. *See In re Lipsky*, 460 S.W.3d at 593 (explaining that "general averments of direct losses and lost profits," even in specified dollar amounts, do not satisfy minimum requirements of TCPA). The City, however, responds that it established a prima facie case under the TCPA with respect to the damages incurred through its pleadings and supporting affidavits. Specifically, the City points to the specific amount of $2,978,950 as an "overpayment" by the City based on appellants fraudulent overcharges in the conspiracy scheme. The City presented the affidavit of Juan E. Gonzalez, the City Attorney for the City of Weslaco, wherein he averred:

The City was damaged by the actions of [appellants] and [co-defendants]. Amendment No. 1 to [co-defendant's] contract cost the City $2,978,950. Given the facts as we now know, this was a high overpayment that was shared among the defendants in this lawsuit, because the purpose of the payment was to compensate Leonel Lopez, Jr. and others. Therefore, the City is damaged by at least that figure.

The City also presented the affidavit of Leonel Lopez, Jr., wherein Lopez confessed to being part of a bribery scheme involving appellants and co-defendants related "to the construction and rehabilitation of a Wastewater Treatment Plant and Water Treatment Plant in Weslaco, Texas." The City provided the trial court evidence of an alleged bribery scheme concocted in part by appellants in order to defraud the City. In furtherance of its allegations, the City's evidence as it related to damages adequately set forth the particular loss the City claims and how the loss relates to the alleged acts of appellants. Appellants argue in part that the City's failure to account for a settlement received from another defendant in this matter renders the provided evidence "insufficient to show that the City's damages are susceptible to calculation with any certainty." However, the City is not required to provide evidence sufficient to allow an exact calculation of the lost profits; rather, it was only required to present evidence sufficient to support a rational inference that appellants' actions caused it to lose some specific, demonstrable profits. *S & S Emergency Training*, 564 S.W.3d at 848 (citing *In re Lipsky*, 460 S.W.3d at 592–93). Accordingly, we find that the City met its burden to establish a prima facie case under the TCPA for the element of damages.

### 3.    Equitable Relief

Appellants argue that the record evidence is insufficient to support the City's equitable relief claims, specifically the City's claims for money had and received, unjust

16

enrichment, constructive trust, and recission.

A constructive trust is an equitable, court-created remedy designed to prevent unjust enrichment. *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 87 (Tex. 2015) (citing *Meadows v. Bierschwale*, 516 S.W.2d 125, 131 (Tex. 1974) ("Constructive trusts, being remedial in character, have the very broad function of redressing wrong or unjust enrichment in keeping with basic principles of equity and justice.")). The party requesting a constructive trust must establish the following: (1) breach of a special trust or fiduciary relationship or actual or constructive fraud; (2) unjust enrichment of the wrongdoer; and (3) an identifiable res that can be traced back to the original property. *Matter of Haber Oil Co., Inc.*, 12 F.3d 426, 437 (5th Cir.1994) (applying Texas law); *see also Meadows*, 516 S.W.2d at 128–31. Here, appellants only challenge that the City did not identify a specific res to support the constructive trust claim. To prove an identifiable res, the proponent of the constructive trust must show that the specific property that is subject to the constructive trust is the same property—or the proceeds from the sale thereof or revenues therefrom—that was somehow wrongfully taken. *Wheeler v. Blacklands Prod. Credit Ass'n*, 627 S.W.2d 846, 851 (Tex. App.—Fort Worth 1982, no writ); *In re Hayward*, 480 S.W.3d 48, 52 (Tex. App.—Fort Worth 2015, no pet.). The City argues that the funds identified as improperly obtained through the fraudulent contract is the res underlying its claim against appellants. The City established a prima facie case that the monetary payment to appellants on the allegedly fraudulent invoices was the res.

Appellants next argue that the City's claims for unjust enrichment and money had and received must be dismissed as a "valid, express contract covers the subject matter

of the parties' dispute, there can be no recovery under a quasi-contract theory." *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000). However, because the City seeks to have the contracts voided as part of their allegations against appellants, this argument by appellants fails. As an alternative theory of recovery, if the City prevails and the contracts are voided, no "valid, express contract" would cover the subject matter of the dispute. Accordingly, the City has established a prima facie case for its claims for unjust enrichment and money had and received, as pled in the alternative.

Lastly, appellant CDM Constructors challenges the City's rescission claim, stating that "[t]he City does not even attempt to provide evidence that might preclude dismissal under the TCPA of its rescission claim" against appellant CDM Constructors. CDM Constructors specifically argues that a rescission claim cannot be based upon a completed contract and that the contract between the City and CDM Constructors was undisputedly completed. To the contrary, the City contends that CDM Constructors did not fully perform on the contract, and even if it had, exceptions justify a rescission claim in this case based on the fraudulent conduct of CDM Constructors. The City relies on *Sister Initiative, LLC v. Broughton Maintenance Association, Inc.* to support its position, which explains

> [a] recognized exception to this rule is that rescission may be allowed without complete or partial restoration of the consideration where the particular circumstances indicate that to be the more equitable result, as where a defrauded party's inability to make restoration is due to the wrongful conduct of the fraudulent party.

No. 02-19-00102-CV, 2020 WL 726785, at *24–25 (Tex. App.—Fort Worth Feb. 13, 2020, pet. denied) (mem. op.) (citing *Turner v. Hous. Agric. Credit Corp.*, 601 S.W.2d 61, 65

18

(Tex. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.)); *see also Shenandoah Assocs. v. J & K Props., Inc.*, 741 S.W.2d 470, 476 (Tex. App.—Dallas 1987, writ denied) (stating that a recognized exception to the rule requiring restoration of the parties to their original status "is when the purchaser terminates the contract and the court has examined the circumstances and determined that it would be more equitable to grant the rescission without the complete or partial restoration of the consideration received by the purchaser while in possession of the purchased item"); *Boyter v. MCR Constr. Co.*, 673 S.W.2d 938, 941 (Tex. App.—Dallas 1984, writ ref'd n.r.e.) (stating that to be entitled to the equitable remedy of rescission, "a party must show either (1) that he and the other party are in the status quo . . . or (2) that there are special equitable considerations that obviate the need for the parties to be in the status quo"). Here, where the City is attempting to void the allegedly fraudulently induced contracts, it has provided a prima facie case under the TCPA on its rescission claim.

Appellants generally argue that the City was required to show that it had no adequate remedy at law in order to pursue its equitable relief claims. In response, however, the City argues that the equitable relief claims were pled in the alternative, and as such "it is inappropriate to dismiss one alternative claim simply because the City might prevail on another." Appellants have not challenged the City's proof of a prima facie case as to any other specific elements of its equitable relief claim. Consequently, we need not address those elements. *See* TEX. R. APP. P. 38.1(i) (appellant's brief must contain clear and concise argument for contentions made with citation to authorities and record).

### 4. Summary

19

Accordingly, having found that the City established a prima facie case under the TCPA as to appellants' challenged claims, we overrule appellants' third issue.

### III.   CONCLUSION

The judgment of the trial court is affirmed.[2]

NORA L. LONGORIA
Justice

Delivered and filed on the
25th day of March, 2021.

---

[2] Appellants also raise a fourth issue that "governmental immunity does not bar the City's liability under the TCPA for costs, fees, and sanctions." However, as we have affirmed the trial court's denial of appellants' TCPA motion, we need not address this issue. *See* TEX. R. APP. P. 47.1.