

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00309-CV

———————————————

## IN RE MICHAEL SHANE LAVENDER AND SHERRI LYNN LEMASTER

On Appeal from the 17th District Court
Tarrant County, Texas
Trial Court No. 017-326257-21

Before Sudderth, C.J.; Bassel and Wallach, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

Relators Michael Shane Lavender and Sherri Lynn Lemaster seek mandamus relief from a trial court order that requires them to deposit into the court's registry (1) lump-sum and ongoing rent and (2) funds from an escrow account related to their failed real estate closing. Although the trial court's aim in requiring these deposits is certainly understandable, the sole source of authority presented in the motion upon which it relied for its order—the *Castilleja* rule—is inapplicable. Therefore, we will conditionally issue the writ.

## I. Background

Relators claim that they contracted to buy a piece of residential real property from Real Party in Interest Mark Bowers and that Bowers allowed them to move in prior to closing but then breached the contract by calling off the sale and deeding the home to Real Party in Interest Condor Land, LLC—a company owned by Bowers's attorney, Real Party in Interest Gary Lancaster. Bowers, meanwhile, claims that although he agreed to sell the property to Relators, they breached the real estate contract by failing to pay the agreed-upon rent prior to closing and by repeatedly delaying and avoiding closing the sale. Whatever the case may be, all parties agree that the original April 2019 closing was repeatedly postponed until finally—after yet another attempt to close fell through in April 2021—Bowers terminated his contract with Relators and sold the property to Condor Land, LLC.

2

When Condor began the eviction process, Relators sued all three Real Parties in Interest, alleging various contract and tort causes of action and seeking specific performance, a temporary injunction to pause the eviction proceedings, a judgment voiding Condor's deed, and monetary damages.[1]  Real Parties counterclaimed with their own contractual and tort allegations, seeking monetary damages.[2]

Because Relators have been living in the property since early 2019, Real Parties filed a motion asking the trial court to exercise its inherent authority to order Relators to pay into the court registry (1) past-due and ongoing rent and (2) the funds held in Relators' escrow account from the failed closing in April 2021.  Real Parties claim that

[1]Relators pleaded (1) conspiracy to defraud, for which they seek to set aside Condor's deed and to recover $193,604.38 plus exemplary damages; (2) breach of contract, for which they seek specific performance or a constructive trust on the proceeds of Bowers's sale to Condor and $193,390.74 in damages; (3) tortious interference with contractual relations, for which they seek $193,390.74; (4) fraud in a real estate transaction, for which they seek $193,390.74 plus exemplary damages; (5) common law fraud, for which they seek $193,390.74; and (6) trespass to try title, for which they seek title to the property.  Relators also requested a temporary injunction to prevent the eviction proceeding from moving forward during the pendency of this lawsuit.

[2]Bowers pleaded (1) breach of contract, for which he seeks $82,206.84 in damages, plus medical expenses and compensation for pain and suffering; (2) fraud in a real estate transaction, for which he seeks "in excess of $100,000";  (3) common law fraud and fraudulent misrepresentation, for which he seeks "in excess of $100,000"; (4) negligent misrepresentation, for which he seeks medical expenses and compensation for pain and suffering; and (5) conspiracy, for which he seeks "significant financial damages," including medical expenses and compensation for pain and suffering.  Condor pleaded a claim for trespass, for which it seeks damages "in excess of $20,000" for, among other things, the loss of use of the property.

3

Relators are using the lawsuit to stall while they live on the property rent-free.[3]  The trial court granted the motion in part and ordered Relators to "deposit . . . into the registry of the Court . . . [m]onies owed, in part, to [Real Parties] . . . in the monthly amount of $2,721.57 beginning May 2021[4] through July 2022 (14 months) for a total of $38,101.98," plus "recurring monthly payments" of $2,721.57 beginning in August 2022,[5] plus "[a]ll monies . . . maintained in [the] escrow account" from Relators' 2021 failed closing.  Relators seek mandamus relief from this order.

## II.  Mandamus Analysis

We grant the extraordinary relief of mandamus only when the trial court has clearly abused its discretion and the relator lacks an adequate appellate remedy.  *In re Team Rocket, L.P.*, 256 S.W.3d 257, 259 (Tex. 2008) (orig. proceeding); *see In re State*, 355 S.W.3d 611, 613 (Tex. 2011) (orig. proceeding).  Such is the case here.

---

[3]The justice court abated the eviction case until title to the property could be decided in this lawsuit.

[4]Bowers transferred the property to Condor in May 2021.

[5]Relators requested an extension of the deadline for the $38,101.98 lump-sum payment, and although that request was denied, the trial court indicated that it would wait to hear any contempt motions to enforce the order until August 10, 2022, effectively granting Relators a grace period through August 9, 2022.  On August 8, 2022, Relators petitioned for mandamus relief and filed an emergency motion to temporarily stay the trial court's order pending our resolution of the petition.  *See* Tex. R. App. P. 52.10(a).  We granted the motion and stayed the trial court's order.  *See* Tex. R. App. P. 52.10(b).

## A. Abuse of Discretion

The challenged order is premised on the trial court's inherent authority, recognized by the Texas Supreme Court in *Castilleja v. Camero*, to require that funds be deposited into the court registry when "[t]he ownership of the fund which [i]s the subject of litigation between these parties [i]s in dispute, and the fund [i]s in danger of being lost or depleted." 414 S.W.2d 431, 433 (Tex. 1967); *accord Zhao v. XO Energy LLC*, 493 S.W.3d 725, 736 (Tex. App.—Houston [1st Dist.] 2016, no pet.). The *Castilleja* rule was the sole legal basis relied upon in Real Parties' motion seeking Relators' deposit of funds,[6] and it is the sole legal basis offered to support the trial court's order in Real Parties' response to Relators' mandamus petition.[7]

---

[6]In Real Parties' motion, they recognized that there are generally two potential sources of authority for a trial court to require a party to deposit funds in the court's registry: (1) inherent authority under *Castilleja* and (2) Chapter 61 of the Texas Civil Practice and Remedies Code. But Real Parties' motion then focused their argument on the first source—inherent authority under *Castilleja*; they did not assert that Chapter 61 applied.

[7]Real Parties interpret Relators' mandamus petition to argue "that Chapter 61 of the Texas Civil Practice and Remedies Code transcends whatever inherent authority the court maintains." But Relators instead argue that "[t]he trial court abused its discretion when it ordered Relators to make ongoing deposits of *general* funds into the court's registry without requiring strict adherence to Chapter 61." [Emphasis in original.] In other words, Relators contend that because the parties seek general money damages rather than ownership of a specific fund, the *Castilleja* rule does not apply, and the trial court could not attach the general funds without complying with Chapter 61. It is undisputed that the trial court did not comply with Chapter 61 or rely upon Chapter 61 as a source of authority for its order. *See* Tex. Civ. Prac. & Rem. Code Ann. ch. 61.

5

But as Relators point out, "this authority arises when there is a dispute about a particular fund." *Behringer Harvard Royal Island, LLC v. Skokos*, No. 05-09-00332-CV, 2009 WL 4756579, at \*4 (Tex. App.—Dallas Dec. 14, 2009, no pet.) (mem. op.). And as Real Parties admit, "in this lawsuit, both sides have alleged general money damages."[8]

Here, there is no specific res of rental funds contained in an identifiable bank account, nor do the parties dispute the ownership of the escrow account associated with Relators' failed closing. *Cf. Castilleja*, 414 S.W.2d at 432 (noting that, where the parties co-owned lottery proceeds, "the trial court found that petitioner had a specific sum of money in the Banco Longoria, Reynosa, Mexico, \$17,000.00 of which belonged to respondent"); *In re Hayward*, 480 S.W.3d 48, 54–55 (Tex. App.—Fort Worth 2015, orig. proceeding) (distinguishing *Castilleja* where real party in interest sought constructive trust to "collect[] general assets (as opposed to an identifiable res) as a form of damages"). Rather, the parties here dispute the ownership of a specific piece of real property and the amount of money that each party allegedly owes the other for various actions taken regarding that real property. Because the parties do not dispute ownership of a particular fund, the *Castilleja* rule—the sole authority cited

---

[8]Although Real Parties concede that "both sides have alleged general money damages," they repeatedly state that "the trial court's decision to declare them specific is [not] unreasonable." To the extent that Real Parties intend to argue that the trial court could alter the objective nature of general money damages by declaring them to be specific, we disagree. And to the extent that Real Parties argue that such a declaration would have been reasonable, we again disagree.

by Real Parties—is inapplicable. *See Hayward*, 480 S.W.3d at 54–55 (distinguishing *Castilleja* because parties did not dispute a specific fund); *Behringer Harvard Royal Island, LLC*, 2009 WL 4756579, at *4 (holding trial court abused its discretion by requiring deposit in court registry when evidence showed that plaintiffs' money had been spent and plaintiffs did not claim an ownership interest in the specific funds to be transferred).

Real Parties argue, though, that while both parties seek "general money damages" in their causes of action, the damages sought in the lawsuit are "not what is at issue in the Motion [seeking the Relators' deposit of funds]."[9] But this distinction does not help their position; instead, it further undercuts the trial court's authority. The *Castilleja* rule applies to a "fund *which [i]s the subject of litigation* between the[] parties [and i]s in dispute." *Castilleja*, 414 S.W.2d at 433 (emphasis added). So if the deposits ordered by the trial court are not at issue in this litigation—as Real Parties contend—then the *Castilleja* rule would not apply.[10]

---

[9]Although Real Parties argue that the damages sought in the lawsuit are not those at issue in the motion, they also contend that Relators waived their "argument that the funds in escrow were not in dispute" by failing to raise it before the trial court. Real Parties' waiver argument is not only contradictory but also inaccurate; Relators argued to the trial court that "the money in escrow does not qualify as a specific fund because it is not in dispute."

[10]To the extent that Real Parties implicitly argue, under *Castilleja* or otherwise, that the trial court can order a pretrial deposit of a "particular fund" that is not at issue in the litigation, they cite no authority for that contention.

Therefore, the trial court abused its discretion by relying on the inapplicable *Castilleja* rule.

## B. No Adequate Remedy by Appeal

"[A] trial court's exercise of its inherent authority to order a party to deposit monies into the registry is reviewable via an original proceeding." *Midwestern Cattle Mktg., LLC v. Nw. Cattle Feeders, LLC*, No. 02-17-00274-CV, 2018 WL 1414834, at *6 (Tex. App.—Fort Worth Mar. 22, 2018, pet. denied) (mem. op.); *see In re De Los Salmones*, No. 14-20-00434-CV, 2020 WL 3864267, at *2 (Tex. App.—Houston [14th Dist.] July 9, 2020, orig. proceeding) (per curiam) (mem. op.) (recognizing that mandamus relief is available if the trial court erroneously orders disputed funds to be paid into the court's registry). Some of our sister courts have held, in similar contexts, that a litigant who is erroneously ordered to deposit a substantial amount of money into the court's registry pending the conclusion of litigation lacks an adequate remedy on appeal. *See O'Brien v. Baker*, No. 05-15-00489-CV, 2015 WL 6859581, at *3 (Tex. App.—Dallas Nov. 9, 2015, orig. proceeding) (mem. op.) (concluding that relator "ha[d] no adequate remedy at law" when trial court ordered relator to pay millions in insurance proceeds into court registry); *In re Mitchell*, 342 S.W.3d 186, 192 (Tex. App.—El Paso 2011, orig. proceeding) (holding appellate remedy inadequate where probate court erroneously ordered parties to deposit funds into court registry and collecting similar cases); *N. Cypress Med. Ctr. Operating Co., Ltd. v. St. Laurent*, 296 S.W.3d 171, 179–80 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding)

(holding that "the benefits to mandamus review outweigh the detriments" and explaining that relator "has been deprived of the use of its money without a showing either of liability or an intent to hide assets from a possible judgment"). We agree with the analysis in these cases and hold that Relators have shown an inadequate remedy by appeal.

## II. Conclusion

Because the trial court abused its discretion by relying on the *Castilleja* rule to order Relators to deposit money into the court's registry, and because Relators lack an adequate remedy by appeal, we conditionally grant the writ of mandamus, we release the stay, and we direct the trial court to vacate its order. Writ will issue if the trial court fails to do so.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: August 30, 2022

9